UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON J. LUNKIN.,

    Petitioner,

    v.        CAUSE NO. 3:19CV940-PPS/MGG

WARDEN,

    Respondent.

## OPINION AND ORDER

Brandon J. Lunkin, a prisoner without a lawyer, filed a habeas corpus petition challenging his 2013 drug convictions in Elkhart County. Because his petition is untimely and otherwise procedurally defaulted, the petition will be denied.

### Background

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Mr. Lunkin's burden to rebut this presumption with clear and convincing evidence. *Id.* In January 2013, the state charged Mr. Lunkin with three counts of dealing in cocaine and one count of maintaining a common nuisance. *Lunkin v. State*, 20 N.E.3d 224 (Table), 2014 WL 2014 WL 4362256, at *1 (Ind. Ct. App. Sept. 3, 2014). The state also charged him with being a habitual offender. *Id.* The day of his scheduled jury trial, Mr. Lunkin pleaded guilty to three counts of dealing in cocaine and admitted to the habitual offender status. *Id.* In January 2014, a sentencing hearing was held. *Id.* Mr. Lunkin "gave a fairly lengthy statement to the trial court in which he apologized for his actions; talked about his religious

conversion; said that he was not ready to give up on himself; and asked that the court not give up on him either." *Id.* The court imposed a whopping sentence—44 years in all. *Id.* In imposing the sentence, the trial court found a number of aggravating factors, including Mr. Lunkin's extensive criminal history, four past failures to appear, five probation violations, and the fact that he was on probation when he committed the present offenses. *Id.* at *2. As mitigating factors, the court considered Mr. Lunkin's statements at the sentencing hearing, his addiction issues, and his acceptance of responsibility. *Id.*

In his direct appeal, Mr. Lunkin raised one argument: that the trial court abused its discretion in failing to consider his "mental illness" as a mitigating factor at sentencing. *Id.* This argument was based on the fact that at sentencing his attorney had requested that Mr. Lunkin's intellectual capabilities be assessed by the Indiana Department of Correction during his incarceration. *Id.* at *1. Counsel stated:

> I am perplexed by the fact that Mr. Lunkin's thought processes, while not incompetent, his thought processes I think need some looking at from the standpoint of synapsis from A to B, C to D, and how his thought processes work. Therefore, I would like a mental health evaluation to be requested in his behalf.
>
> I'm not saying anything that he's, you know, insane or incompetent or anything like that. But I do believe that there are issues there that may be of a learning disability nature, but they somehow seem to translate into an inability to perhaps think in a logical fashion. And I would ask that that be—that that be requested as something that the DOC should look at for him.

*Id.* at *1.

In an opinion issued September 3, 2014, the Indiana Court of Appeals found no error by the trial court. *Id.* The court observed: "[T]he only hint as to potential mental illness suffered by Lunkin is in his counsel's argument at the sentencing hearing and request for mental health evaluation by the DOC after sentencing. No evidence whatsoever was presented at the hearing that Lunkin suffers from, or has previously suffered from, any identifiable mental illness." *Id.* at 2. The court also pointed out that the trial court, which had the opportunity to observe Mr. Lunkin, "concluded that he did not have trouble comprehending the proceedings," and "went so far as to describe Lunkin as 'eloquent' in his statement to the trial court at the sentencing hearing." *Id.* at *2. The court affirmed Mr. Lunkin's sentence in all respects. *Id.* at *3. Mr. Lunkin had 45 days to file a petition to transfer to the Indiana Supreme Court, but no such petition was filed. (*See* ECF 1 at 1; ECF 9-2 at 3.)

Well over a year went by without any action from Mr. Lunkin. But on February 22, 2016, he filed a post-conviction petition in state court. (ECF 9-8.) Following an evidentiary hearing, the petition was denied. (ECF 9-9.) On appeal, Mr. Lunkin raised the following claims: his trial counsel was ineffective in failing to properly advise him about the penal consequences he faced if he pled guilty and admitted to being a habitual offender; and the post-conviction court erred in failing to *sua sponte* continue the evidentiary hearing. *Lunkin v. State*, 124 N.E.3d 647 (Table), 2019 WL 1612847, at *2-8 (Ind. Ct. App. Apr. 16, 2019). The Indiana Court of Appeals rejected these arguments and affirmed the denial of post-conviction relief. *Id.* at *9. The Indiana Supreme Court

3

denied his petition to transfer on June 28, 2019. *Lunkin v. State*, 129 N.E.3d 785 (Ind. 2019).

On October 11, 2019, Mr. Lunkin tendered his federal petition for filing. (ECF 1 at 6.) He asserts two claims, which he articulates as follows: (1) his trial counsel was ineffective in "failing to present Brandon Lunkin's mentally ill defense to a jury of his peers"; and (2) his counsel on direct appeal was ineffective in "failing to recognize that a lead brief on Lunkin's behalf, with the sole issue of mental health deficiencies, was dead on arrival." (*Id.* at 4-5.) The respondent argues that the petition must be denied because it is untimely and Mr. Lunkin's claims are otherwise procedurally defaulted. (ECF 9.)

## Discussion

Mr. Lunkin's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which contains a strict statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has

>   been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

As discussed above, Mr. Lunkin's conviction was affirmed by the Indiana Court of Appeals on September 3, 2014. *Lunkin*, 2014 WL 4362256, at *3. He did not seek rehearing, nor did he seek transfer in the Indiana Supreme Court. (*See* ECF 9-2 at 3.) His conviction became final for purposes of AEDPA when the time for filing a petition to transfer expired 45 days after the Indiana Court of Appeals issued its opinion. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (for habeas petitioners who do not complete all levels of state review, the judgment becomes final when the time for filing a further appeal expires); *see also* IND. R. APP. P. 57(C) (providing that petition to transfer is due no later than 45 days from the adverse decision by the court of appeals). As of that date—October 20, 2014—the one-year clock began running, giving Mr. Lunkin until October 2015 to file a timely federal petition. He did not file his federal petition by that deadline.

Although he filed a state post-conviction petition in February 2016, the federal deadline had already expired some 120 days earlier. The Indiana Court of Appeals' decision in April 2019 affirming the denial of post-conviction relief did not restart the

5

deadline or open a new "window" for federal habeas review. *De Jesus v. Acevedo*, 567 F.3d 941, 942-43 (7th Cir. 2009). Additionally, another 105 days elapsed on the federal clock between the date the Indiana Supreme Court denied transfer on post-conviction review and the date Mr. Lunkin filed his federal petition. This petition was thus filed well over a year after Mr. Lunkin's conviction became final.

      Mr. Lunkin does not argue, nor can I find a basis in the record to conclude, that his claims are based on newly discovered facts or a new Supreme Court case. *See* 28 U.S.C. § 2244(d)(1)(C)-(D). Instead, he is asserting straightforward claims of ineffective assistance of counsel based on trial counsel's performance at sentencing and appellate counsel's performance on direct appeal. The factual basis for these claims would have been available to him at the time of these events, which occurred in 2014. Nor does he identify any state-created impediment that prevented him from filing his federal petition on time. *See* 28 U.S.C. § 2244(d)(1)(B). He mentions in his petition that he "waited 92 days" to hear from the attorney who represented him on direct appeal, apparently to determine whether counsel would represent him in connection with a post-conviction petition. (ECF 1 at 6.) It is not clear why Mr. Lunkin expected counsel to continue representing him as he had no right to counsel in the post-conviction proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). But even if I were to subtract those 92 days from the equation, Mr. Lunkin's petition still would have been filed well past the one-year deadline.

      Mr. Lunkin does not specifically argue that he is entitled to equitable tolling, but given his *pro se* status and the fact that one of his claims hinges on an alleged mental

6

illness, I have considered whether he might be entitled to it nonetheless. In appropriate circumstances, a mental impairment can provide grounds to equitably toll the deadline for seeking federal habeas relief. *See Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020). Here, however, the record does not support its application.

Mr. Lunkin does not specifically claim that he suffers from a mental illness or impairment; rather, his claim is more nuanced. He argues that it was contradictory for his trial counsel not to explore whether he might be suffering from a mental defect supporting a "guilty but mentally ill defense," while at the same time arguing at sentencing, "be nice to him judge because he's not all there . . . essentially." (ECF 1 at 3, 4.) Mr. Lunkin expressly admits in his petition that there "was no mental health disease in Lunkin's life prior to prison, nor while incarcerated, at least not to date." (*Id.* at 4.) He further states that his "IQ nor mental health has [n]ever been tested, or questioned in any arena: educationally, mentally, socially or otherwise." (*Id.* at 5.)

Indeed, the Indiana Court of Appeals observed on direct appeal that the record contained "[n]o evidence whatsoever . . . that Lunkin suffers from, or has previously suffered from, any identifiable mental illness." *Lunkin*, 2014 WL 4362256, at *2. The state trial court, which had the opportunity to observe Mr. Lunkin, believed he did not have comprehension problems and was even "eloquent" when he addressed the court. *Id.* Mr. Lunkin's filings in this court have also been neatly presented and contain cogent arguments in support of his position.[1] In short, I find no basis to equitably toll the

---

[1] Indeed, some of Mr. Lunkin's arguments before this court could be deemed "eloquent" too. (*See, e.g.*, ECF 14 at 2) ("[C]ounsel for Lunkin at this juncture of the proceedings was ineffective for failing to

7

deadline based on an alleged mental impairment. Therefore, the petition is untimely and cannot be considered on the merits.

There is another problem with the petition aside from the timeliness issue. It deals with exhaustion of available state court remedies—an issue that haunts a lot of habeas petitions. Let's be honest about it, AEDPA presents a series of procedural traps for the unwary. Step in any of them, and poof, your case is a goner. Before I can consider the merits of a habeas petition, I have to first ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020). The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

One trap is the so-called "fair presentment" doctrine. What this means is that a petitioner must fairly present his constitutional claim in one complete round of state court review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. *Boerckel*, 526 U.S. at 848. A different but related trap is the procedural default doctrine, which is rooted in comity concerns. It precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an

---

enlighten the court to the need for testing now before he had Lunkin plead guilty to a crime counsel had concerns about his client understanding. This nullity is inexcusable and amounts to a prejudice upon the defendant that cannot be cured by anything less than an adjudication on the merits of counsel's performance.").

8

adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and the opportunity to do so has now passed. *Davila*, 137 S. Ct. at 2064; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

The respondent argues that Mr. Lunkin has fell into both traps. (ECF 9 at 6-7.) On direct appeal, Mr. Lunkin argued only that the trial court abused its discretion in imposing a sentence. *Lunkin*, 2014 WL 2014 WL 4362256, at *2. On post-conviction review, he argued that his trial counsel was ineffective in failing to properly advise him about the penal consequences he faced if he pleaded guilty, and that the post-conviction court erred in not continuing the evidentiary hearing. *Lunkin*, 2019 WL 1612847, at *2-8. He did not raise the claims he raises here— that his trial counsel was ineffective in failing to raise an issue about his mental health at sentencing, and his appellate counsel was ineffective in selecting an argument to raise on direct appeal—in either proceeding. Although he asserted ineffective-assistance claims on post-conviction review, each ground of ineffective-assistance is considered separate for exhaustion purposes. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). Mr. Lunkin did not present the state courts with the specific facts surrounding his current ineffective-assistance claims. *See Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) (to fairly present a claim, the "petitioner must place before the state court both the controlling law and the operative facts" supporting his claim). Because he failed to raise these claims in the state courts and the time for doing so has passed, the claims are procedurally defaulted. *Davila*, 137 S. Ct. at 2064.

In his traverse, Mr. Lunkin suggests that his default should be excused because his trial counsel was ineffective at sentencing. (ECF 14 at 2-3.) But errors by trial counsel

9

at sentencing would not explain why Mr. Lunkin did not assert his ineffective-assistance claims on post-conviction review, at a time when he was representing himself. He also appears to argue that his counsel on direct appeal, Teresa Cataldo, was ineffective in not asserting an argument on direct appeal regarding trial counsel's performance. (*Id.* at 3.) Attorney error rising to the level of ineffective assistance of counsel can amount to cause sufficient to excuse a procedural default. *Davila*, 137 S. Ct. at 2065. But the exhaustion doctrine requires that an ineffective-assistance claim be presented to the state court as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). The record reflects that Mr. Lunkin did not raise any claim regarding *appellate* counsel's performance, and instead focused on alleged errors by trial counsel. *Lunkin*, 2019 WL 1612847, at *3-*8. Therefore, in view of these defaults, I could not reach his claims on the merits even if they were timely.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Mr. Lunkin's petition is untimely and his claims procedurally

defaulted. I find no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Mr. Lunkin to proceed further. Accordingly, I decline to issue him a certificate of appealability.

## Conclusion

Accordingly, the petition (ECF 1) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on September 21, 2020.

                                          /s/ Philip P. Simon
                                          JUDGE
                                          UNITED STATES DISTRICT COURT